IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**July 31, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**MELISSA STUTLER,**
**Petitioner Below, Petitioner**

**v.) No. 25-ICA-478**    (Fam. Ct. Greenbrier Cnty. Case No. FC-13-2025-D-74)

**TROY STUTLER,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Melissa Stutler ("Wife") appeals the Family Court of Greenbrier County's June 11, 2025, and September 11, 2025, orders. Respondent Troy Stutler ("Husband") filed a response in support of the family court's orders. Wife did not file a reply.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the lower tribunal's decision but no substantial question of law. For the reasons set forth below, a memorandum decision vacating and remanding for further proceedings is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Based upon the limited record on appeal, the facts of this case are relatively sparse. The parties were married in July of 2017 and separated in March of 2025. On April 22, 2025, Wife filed a petition for divorce. By order entered June 11, 2025, the family court entered a Bifurcated Divorce Order, divorcing the parties but holding rulings on spousal support and property distribution in abeyance.

On August 27, 2025, the family court held a final hearing on the parties' remaining issues. Both parties appeared in person and were self-represented. Husband testified that the home the parties lived in prior to and during the marriage was his separate property. Husband asserted that his father gifted him and his brother the "marital" home and a second home as joint tenants prior to the parties' marriage. However, Husband claimed that in 2020, he gave up his one-half interest in the second home, and his brother gave up his one-half interest in the marital home. Appearing to read directly from the December 2020 deed,

---

[1] Wife is self-represented. Husband is represented by Alyson A. Dotson, Esq.

Wife testified that Husband's father retained a life estate in the marital home.[2] The family court orally found that the home was Husband's separate property. Husband testified that there was a lien on the home because he and his mother took out an $85,000 loan during the parties' marriage. Husband further explained that he purchased a truck, paid off some credit cards, and planned to put a roof on the house with the funds from the loan. Husband testified that the loan was paid down to approximately $68,000.

Wife testified that during the parties' marriage she used her separate money to remodel the upstairs bathroom, downstairs bathroom, kitchen, living room, install new flooring, buy new appliances and new furniture, build a deck on the home, and buy a building—a small garage for motorcycles—that the parties deemed "the Shop." Wife testified to the amount she spent on certain improvements, such as the flooring. Wife asked the court to award her the Shop and a standup freezer in the distribution of the parties' property, among other things. Wife also testified that she bought the Shop in 2019, for more than $5,000, and that she spent more than $1,000 on improvements, including the installation of paneling, electricity, and insulation in the building. Husband argued that the Shop did not cost more than $5,000 and everything Wife purchased for the Shop's improvements was on sale. He asserted that Wife did not pay for the labor regarding the improvements because his friend performed the labor for free.

The court orally informed the parties that Husband was "on the hook" for the $75,000[3] loan to allow him to remain in the home, and that the $75,000 loan was marital debt. The parties testified that they purchased a side by side that was valued at approximately $13,000 to $14,000. Wife agreed that Husband should retain the side by side in the divorce because he would use it more. The parties testified that Husband owned a truck, and Wife owned a Jeep, both of which were purchased during the marriage. Testimony revealed that after the parties separated, Husband paid off Wife's Jeep for approximately $18,000, tendered the title to Wife, and made a separate $18,200 payment to Wife.

On September 11, 2025, the family court entered a final order from the August 27, 2025, final divorce hearing. Finding that the "parties were married for less than 8 years," had no children, and "did not forgo any earning potential by virtue of the marriage," the court concluded that spousal support was not warranted in the matter, reasoning that both

---

[2] A review of the hearing reveals that Wife was unable to finish reading from the deed because she was interrupted.

[3] We note that a review of the hearing reveals that Husband testified that the original amount of the loan was $85,000 and that it was currently $68,000. Thus, we are unable to discern how the family court determined the amount was $75,000; regardless, Wife does not raise this issue on appeal.

parties appeared to be in a position to support themselves. Regarding the marital property, the court determined that Husband's action of paying the remainder of the Jeep payment, tendering the title to Wife, and paying her $18,200 resulted in a total equitable distribution of the parties' property. Specifically, the order stated the following:

> While the parties had some disagreement regarding the value of the Can Am side by side and the Shop, the parties generally otherwise agreed to its accuracy. Heretofore and since separation/divorce, [Husband] paid off a 2018 Jeep (approximately $18,000) and tendered the title to [Wife] $18,200.00 dollars in connection with her marital interests in those properties. The [c]ourt finds that the marital home is [Husband's] separate property, but that there is a marital interest in improvements, as well as the $75,000.00 marital debt taken on during the marriage. The [c]ourt finds that the marital debt and improvements balance out such that [Husband's] assumption of responsibility for the $75,000.00 in marital debt . . . more than covers any interest subject to equitable division. The [c]ourt further finds that the payments heretofore made by [Husband] in paying off the Jeep and the $18,200.00 is at least as much as would be due in equitable distribution and shall serve as total equitable distribution, provided, [Wife] shall be entitled to return to the home on the weekend of Sept. 5 to pick up her personal effects as well as a standup freezer.

It is from the June 11, 2025, Bifurcated Divorce Order and the September 11, 2025, final order that Wife now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

3

On appeal, Wife's brief fails to state any assignments of error as required by Rule 10 of the West Virginia Rules of Appellate Procedure.[4] Rather, her brief contains arguments in the statement of the case section and the argument section. However, as has been our past practice, we are mindful that "when a litigant chooses to represent herself, it is the duty of the court to insure fairness, allowing reasonable accommodations for the pro se litigant so long as no harm is done an adverse party." *Tiana M. v. Michael M.*, No. 25-ICA-185, 2025 WL 3709150, at *3 (W. Va. Ct. App. Dec. 22, 2025) (memorandum decision) (citation modified).

---

[4] As we previously acknowledged regarding Rule 10(c) of the West Virginia Rules of Appellate Procedure:

> The Supreme Court of Appeals of West Virginia ("SCAWV") recently explained the importance of compliance with Rule 10 in providing for clear, concise, and organized briefs and emphasized the significance of that rule and that parties, including self-represented parties, should not anticipate that this Court will find or make arguments for them. *See Metro Tristate, Inc. v. Pub. Serv. Comm'n of W. Va.*, 245 W. Va. 495, 502-03, 859 S.E.2d 438, 445-46 (2021). Rule 10(c) provides that "the petitioner's brief *shall* contain the following sections in the order indicated[.]" (Emphasis added.) The rule goes on to specify, in order, nine different sections that must follow the cover page beginning with a table of contents. *Id.* Rule 10(c)(3) requires that the brief "open with a list of the assignments of error that are presented for review, expressed in terms and circumstances of the case but *without unnecessary detail.*" (Emphasis added). "The practice of opening a brief with a series of assignments of error serves to alert the Court to the singular issue or issues that may have adversely affected the outcome before the trial court." *Wilson v. Kerr*, No. 19-0933, 2020 WL 7391150, at *3 (W. Va. Dec. 16, 2020) (memorandum decision). Clearly defining the issues presented averts the danger that "the Court and respondent may discern different issues from a petitioner's lengthy, free-flowing argument." *Id.* While the brief must open with a list of assignments of error presented for review, Rule 10(c)(7) mandates that the brief contain an argument section which has separate, distinct headings corresponding to each of the aforementioned assignments of error. Rule 10(c)(7) also requires the separate argument section to include "citations that pinpoint when and how the issues . . . were presented to the [family court]." This Court may disregard errors that are not adequately supported by specific references to the record. *Id.*

*Christopher M. v. Lucia M.*, 25-ICA-39, 2025 WL 2993689, at *4 n.5 (W. Va. Ct. App. Oct. 24, 2025) (memorandum decision).

4

Therefore, we will only address the issues we can reasonably determine comprise the substance of Wife's appeal. Upon review, we conclude that Wife makes two arguments assigning error to the family court's decision.

First, Wife argues that the family court failed to equitably distribute the parties' marital property. Specifically, Wife contends that the court failed to consider the value of the Shop, the side by side, the new appliances and furniture, and the remodeling improvements made to the home in its division of the property. She further argues that the court failed to consider that the new appliances, new furniture, remodeling, and deck were paid for with her separate funds. Wife maintains that by only awarding her the 2018 Jeep, freezer, and personal belongings, the court's division of the parties' marital property resulted in an unequal distribution, particularly because Husband retained all the remaining marital assets.[5]

Upon review, we conclude that the September 11, 2025, final order is insufficient for meaningful appellate review as it lacks the essential findings and analysis concerning the equitable distribution of the parties' marital estate. The SCAWV has held that "[e]quitable distribution . . . is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in [W. Va. Code § 48-7-103]." Syl. Pt. 1, *Whiting v. Whiting*, 183 W. Va. 451, 396 S.E.2d 413 (1990). Further, West Virginia Code § 48-7-106 (2001) provides:

> In any order which divides or transfers the title to any property, determines the ownership or value of any property, designates the specific property to which any party is entitled or grants any monetary award, the court shall set out in detail its findings of fact and conclusions of law, and the reasons for dividing the property in the manner adopted.

*See also* Syl. Pt. 2, *Somerville v. Somerville*, 179 W. Va. 386, 369 S.E.2d 459 (1988); Syl. Pt. 5, *Burnside v. Burnside*, 194 W. Va. 263, 460 S.E.2d 264 (1995).

Here, although the family court's order contains some findings of fact and conclusions of law, it does not adequately address the equitable distribution process or sufficiently show how its division of the marital property resulted in an equal distribution between the parties or is otherwise equitable.[6] For instance, the parties disagreed on the

---

[5] Wife also asserts that the family court failed to consider the 2020 deed.

[6] When dividing property in a divorce proceeding, we recently stated that,

[e]xcept for certain limited categories of property that are considered separate or nonmarital property, West Virginia Code § 48-1-233 (2001) defines marital property as "[a]ll property and earnings acquired by either

values of the Shop and the side by side during the hearing, yet the court's order omits the values it considered for either of those assets in its equitable distribution analysis.[7] As another example, there was testimony regarding a mattress purportedly valued at $6,000 and a bedroom suit allegedly worth more than $1,000 that were purchased during the marriage, yet while Husband retained those items in the divorce, the order fails to classify, value, or discuss what role those items played, if any, in the court's equitable distribution process.

As a last example, Husband testified that he owned a truck that was purchased during the marriage, yet it was not addressed in the family court's order. There is also no finding of whether the Jeep's $18,000 debt that Husband paid in full was marital. In other words, it is unclear whether the court considered that $9,000 of the Jeep's debt was already Husband's responsibility because it was a marital debt in the equitable division process.

The above examples are not intended to be an exhaustive list but are indicative of the insufficiency of the family court's order concerning the equitable division of the parties' marital property. The SCAWV has long held that a family court's order "must be sufficient to indicate the factual and legal basis for the [court]'s ultimate conclusion so as to facilitate a meaningful review of the issues presented." *In re F.B.*, 929 S.E.2d 724, 730-31 (W. Va. May 29, 2026) (alteration in original) (quoting *Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996)).

In *F.B.*, the SCAWV explained that "clear and complete findings by the trial judge are essential to enable the appellate court properly to exercise and not exceed our powers of review." *Id*. at 731 (citation modified).

> When a [family] court does not make or "explain" its factual findings, "we do not get the benefit of [the court's] experience and reasoning." *Province*, 196 W. Va. at 483, 473 S.E.2d at 904. Without that reasoning, "any deference

---

> spouse during a marriage[.]" "In a divorce proceeding, subject to some limitations, all property is considered marital property, which preference is reflected in our case law." *Arneault v. Arneault*, 219 W. Va. 628, 633, 639 S.E.2d 720, 725 (2006). West Virginia Code § 48-7-101 (2001) provides that the family court "shall divide the marital property of the parties equally between the parties."

*Jaun-Pierre V. v. Chelsea V.*, No. 24-ICA-390, 2025 WL 1604324, at *3 (W. Va. Ct. App. June 6, 2025) (memorandum decision).

[7] The order simply states that "[w]hile the parties had some disagreement regarding the value of the Can Am side by side and the Shop, the parties generally otherwise agreed to its accuracy."

we might otherwise accord such a ruling will be nullified by the absence of a meaningful explanation." *Id.*

*Id.* at 731-32. In other words, courts must "show their work" by making the necessary findings to support and thoroughly explain how they reached their legal conclusions. *See In re R.M., B.M., and H.M.*, 252 W. Va. 422, 923 S.E.2d 352 (2025) (Ewing, J., joined by Hutchison, S.S.J., concurring).

As we cannot discern the classification or values of all the property the family court relied upon in dividing the parties' property, our function as an appellate court is impaired. Because we cannot adequately assess whether the family court properly divided the marital property according to the relevant authorities, we are unable to facilitate a meaningful review. As such, we must vacate the September 11, 2025, order as it pertains to the equitable distribution of the parties' property and remand the matter to the family court for entry of an order containing findings of fact and conclusions of law sufficient for meaningful review.[8] In the new order, the family court must thoroughly address the equitable distribution process, including all the property it considered, and explain the reasoning for its determination.

Lastly, Wife argues that Husband prevented her from retrieving her personal belongings as permitted in the order. "Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (citation modified); *see Konchesky v. S.J. Groves & Sons Co., Inc.*, 148 W. Va. 411, 414, 135 S.E.2d 299, 302 (1964) ("[I]t has always been necessary for a party to object or except in some manner to the ruling of a trial court, in order to give said court an opportunity to rule on such objection before this Court will consider such matter on appeal."). The record reveals that the issue Wife complains of on appeal was never brought before the family court by petition or otherwise. As such, we decline to consider Wife's second argument.

Accordingly, we vacate only those portions of the September 11, 2025, final order pertaining to the equitable distribution of the parties' property and remand for entry of a new order consistent with this decision. Upon remand, the family court is directed to utilize the three-step equitable distribution process and articulate the reasons for dividing the property in the manner applied.

Vacated and Remanded with Directions.

**ISSUED:** July 31, 2026

---

[8] On remand, the family court may take additional evidence as it deems necessary.

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White